STATE OF MISSOURI upon the information of ROY McKITTRICK, Attorney General, Relator, v. C. S. DUDLEY & COMPANY, INC., a Corporation.—102 S. W. (2d) 895.

Court en Banc, March 24, 1937.

*Roy McKittrick*, Attorney General, and *Franklin E. Reagan*, Assistant Attorney General, for relator; *Paul M. Peterson* of counsel.

*Polk & Williams* for respondent.

*Denton Dunn* and *Joseph S. Lafferty, amici curiae* for Lawyers' Association of Kansas City.

*Carl H. Langknecht, amicus curiae* for Kansas City Bar Association.

*Edwin A. Krauthoff, amicus curiae* for Credit Clearing House Adjustment Corporation.

*John K. Lord, Jr., Irvin H. Gamble, Francis L. Kane* and *John C. Robertson, amici curiae.*

*Glen C. Weatherby, Verne D. Edwards* and *John Kramer, amici curiae.*

*Hyman G. Stein, Conway Elder, G. T. Priest, George E. Mix, Ernest F. Oakley* and *Courtney S. Goodman* for unauthorized practice of law, appointed by the Lawyers' Association of Eighth Judicial Circuit.

*Brown Shoe Company, Johnson-Stephens & Shinkle Company* and *Anheuser-Busch,* Incorporated, *amici curiae.*

TIPTON, J.—The Attorney General of the State of Missouri, filed an original proceeding in this court in the nature of *quo warranto* against the respondent, C. S. Dudley & Company, Inc., a corporation, praying for the forfeiture of its corporate charter because it has been guilty of usurping privileges, franchises, rights and authorities not granted by the State of Missouri, in that the respondent is wrongfully and illegally engaged in the "practice of law" and conducting "a law business."

Upon motion of the relator this court appointed the Honorable Du Val Smith, of St. Joseph, Missouri, a special commissioner in this cause to take the testimony and report his findings of fact and conclusion of law to this court. The cause was tried before the commissioner upon an agreed statement of facts. In his findings and recommendation, the commissioner reported to this court that he found the respondent had usurped rights and privileges not conferred upon it or warranted by law, in that it had unlawfully engaged in "law business" and "the practice of law." The commissioner recommended that the respondent be fined $1 and be taxed with the cost of this proceeding, and that it be admonished to desist and refrain from its illegal practice upon penalty of forfeiture of its charter and franchise. It is chartered "to do a general collection and adjustment business." The respondent collects or attempts to collect liquidated commercial accounts for an agreed contingent compensation. It solicits such business by personal calls and by letters, and prior to October 23, 1935 (two days after the motion to show cause was issued), respondent represented to prospective customers that it was in a position to collect accounts through its agents and associated attorneys. If it was necessary to send the account to an attorney, the respondent selected him and made arrangements for his fee and carried on all the correspondence between the attorney and the creditor. After October 23, 1935, if it became necessary to place the claim in the hands of an attorney, and the creditor did not choose to select one, the respondent was authorized to do so.

Prior to the filing of the suit, respondents told debtors who did not pay that suit would be instituted by its attorneys. After this suit was filed, respondent changed this practice, and now tells debtors who do not pay that the creditor will institute suit and respondent has since changed its by-laws so as to prohibit any employee from stating that the respondent can or many institute legal proceedings to enforce the collection.

The customary fee of the respondent was fifteen per cent of the amount collected on claims up to five hundred dollars, and where suit was instituted a seven dollar and fifty cent suit fee was usually paid by the creditor in addition to the contingent fee. The agreed statement of facts show that in 1933, where a claim was sent to an attorney for collection, the attorney received two-thirds of the fee and a suit fee of five dollars and the respondent received one-third of the contingent fee and an additional suit fee of two dollars and fifty cents. At that time, the respondent, in its letter to debtors threatened to resort "to measures that would affect your credit standing or embarrass you commercially" and the letter also stated that unless payment was made "we shall take steps to make the collection." If the account was not paid, respondent selected an attorney and sent the claim to him for collection.

The present method of the respondent in handling its business is as follows. (This method was adopted after the filing of this suit.) Claims sent to the respondent were collected on the following schedule of fees. Fifteen per cent on the first five hundred dollars; ten per cent on the next five hundred dollars; five per cent on the excess of one thousand dollars; the minimum charge was seven dollars and fifty cents and items of fifteen dollars or less was fifty per cent.

It is stated in the letter of transmittal from the creditor to the respondent that respondent's services "shall not include legal work." However, if it is necessary for the claim to be placed in the hands of an attorney, the respondent sends the claim to the attorney; first asking the creditor to select one, and if the creditor does not do so, the respondent then selects an attorney. In sending the claim to the attorney, the letter states that the respondent is acting as agent for the creditor. The letter also, states what fee the attorney will receive. When a collection is made the attorney deducts sixty per cent of the fee, or nine per cent of the amount collected and remits the balance to the respondent who deducts six per cent of the amount collected and remits the rest to the creditor. The suit fee of seven dollars and fifty cents is divided so that the attorney gets five dollars, and the respondent's share is two dollars and fifty cents. The attorney is directed to send all communications to the respondent and not direct to the creditor or the client. In communications to the creditor, the respondent now refers to the attorney as "your attorney."

Prior to the filing of this suit, respondent selected all attorneys to whom collections were sent; but since that time the respondent selected nearly all the attorneys to whom claims were sent for collection, and the creditors the others.

Since January 1, 1933, the respondent has handled approximately five thousand claims of which about five hundred and fifty were placed in the hands of an attorney for collection.

■ A corporation cannot practice law or conduct a law business. [State ex inf. Miller v. St. Louis Union Trust Co., 335 Mo. 845, 74 S. W. (2d) 348; State ex rel. Lundin v. Merchants' Protective Corporation, 177 Pac. 694. The respondent does not claim it has the right to practice law. It contends that in conducting its business it does not practice law or conduct a law business as these terms are defined either under a statutory definition or as they are defined under the inherent power of the courts.

Section 11692, Revised Statutes 1929, defines these terms as follows:

"The 'practice of law' is hereby defined to be and is the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court of record, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies. The 'law business' is hereby defined to be and is the advising or counseling for a valuable consideration of any person, firm, association or corporation as to any secular law or the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular rights or the doing of any act for a valuable consideration in a representative capacity, obtaining or tending to obtain or securing or tending to secure for any person, firm, association or corporation any property or property rights whatsoever."

In the case of Boyle G. Clark, General Chairman of the Bar Committee, et al. v. Edwin Austin, P. H. Coon, and Fred Hull, 340 Mo. 467, 101 S. W. (2d) 977, in an opinion by Judge Frank, these terms were defined as follows:

"It would be difficult to give an all-inclusive definition of the practice of law, and we will not attempt to do so. It will be sufficient for present purposes to say that one is engaged in the practice of law when he, for a valuable consideration engages in the business of advising persons, firms, associations, or corporations as to their rights under the law, or, appears in a representative capacity as an advocate in proceedings pending or prospective, before any court, commissioner, referee, board, body, committee, or commission constituted by law or authorized to settle controversies, and there, in such representative capacity, performs any act or acts for the purpose of obtaining or defending the rights or their clients under the law. Otherwise stated, one who, in a representative capacity, engaged in the business of advising clients as to their rights under the law, or while so engaged, performs any act or acts either in court or outside of court for that purpose, is engaged in the practice of law."

Both definitions are practically the same. Thus we see that either the statutory definition or the definition of the practice of law as

found in Judge FRANK's opinion that the practice of law is not confined to actual appearance in court.

In the statutory definition we think the phrase "or doing any act for a valuable consideration in a representative capacity, obtaining or tending to obtain or securing or tending to secure for any person, firm, association or corporation any property right whatsoever" means the doing of any act that requires legal knowledge.

█ The respondents solicit liquidated commercial accounts from wholesale concerns and manufacturers for collection on a commission basis. A large per cent of these accounts are collected by making personal calls on the debtor or writing him letters. If this was all the respondents did, certainly it would not be practicing law. A layman, who is the agent of a creditor, has a right to present a claim or note to the debtor for payment and to receive the payment in behalf of the creditor. In other words, if the business of the respondent is confined to the collection of claims without legal proceeding, it is not engaged in the practice of law. [Neander v. Tillman (N. Y.), 232 App. Div. 189; In Matter of Associated Lawyers Company (N. Y.), 134 App. Div. 350; Public Traffic Bureau v. Haworth Marble Co., 178 N. E. 703; Kendrick v. State (Ala.), 120 So. 142; State v. James Sanford Agency (Tenn.), 69 S. W. (2d) 895.]

But the difficult question arises when the respondent is unable to collect the account by making a demand upon the debtor. It is then necessary to resort to the courts to enforce the collection. When these conditions arise the respondent does not return the account to the creditor but keeps the account and sends it to an attorney for collection. It claims that its present method of doing business (the plan adopted by respondent October 23, 1935), is to notify the creditor that it is necessary to file suit to enforce the collection, and asks the creditor to select an attorney for that purpose, and if the creditor does not select an attorney the respondent selects one as agent for the creditor. In nearly every instance the respondent still selects the attorney.

█ As a general proposition there is no doubt that an agent may be appointed to select an attorney to represent the principal, but where this is done, it is essential that the attorney so employed must represent the principal and not the agent. [1 Thornton on Attorneys at Law, sec. 136, p. 324; Porter v. Peckham, 44 Cal. 204; Eoff v. Irvine, 108 Mo. 378, 18 S. W. 907; Strong v. West, 110 Ga. 382.]

"It is not necessary that this employment of an attorney should be made by the client in person, but like other contracts, may be made through a duly authorized agent, and if the agent acts in accordance with his authority, the attorney will be the attorney of

the client and not of the agent." [2 Clark & Skyles on Agency, sec. 631, p. 1370.]

The respondent in its brief says: "There appears to have been about four periods covered by the agreed statement of facts in this case with reference to the forwarding of claims and accounts to attorneys by the respondent for attention. The first period was during the year 1933, and up to about January 1, 1934. The second period was from about January 1, 1934, to July 1, 1935. The third period was from about July 1, 1935, to October 23, 1935. The fourth period was since October 23, 1935."

As this is a *quo warranto* proceeding to determine if the respondent has usurped the right to practice law, it will be guilty of that offense if it has done so at any time for three years prior to October 21, 1935, the date the information was filed in this case.

"In State ex inf. Major v. Arkansas Lumber Co., 260 Mo. 212. 284, 285, 286, 169 S. W. 145, we construed what is now Section 863. Revised Statutes 1929 (Mo. Stat. Ann., sec. 863, p. 1150), and held that thereunder the charter of a corporation is subject to forfeiture for any acts warranting the same which were committed within a period of three years prior to the filing of the information." [State ex inf. Miller v. St. Louis Union Trust Co., 335 Mo. 845, 74 S. W. (2d) 348, 355.]

In 1933, the method of doing business by the respondents was as follows: When the claim was received by the respondent, it wrote the debtor wherein it threatened "resorting to measures that would affect your credit standing or embarrass you commercially" and the letter also stated that unless payment was made "we shall take steps to make the collection." Failing to collect, respondent selected an attorney to enforce the collection. In case the attorney was successful in making the collection he retained two-thirds of the fee and remitted the balance to the respondent who retained the other one-third of the fee and sent the balance to the customer. If it was necessary to file suit, the client sent to the respondent seven dollars and fifty cents as suit money, of which the respondent kept two dollars and fifty cents and sent the attorney five dollars. All the correspondence with the attorney was carried on by the respondent and not the creditor. In the letter of transmittal to the attorney, he is told what the fee would be by the respondent. For instance, on claims of not over five hundred dollars, the fee the client paid was fifteen per cent, and claims involving larger sums the fee was less.

From January 1, 1934, to July 1, 1935, the suit fee of five dollars was retained by the attorney. The attorneys to whom claims and accounts were sent were selected from various bonded lists by the respondent.

From July 1, 1935, to October 23, 1935, the attorney would deduc⁺ the commissions due him as shown by the forwarding letter, and

would in addition thereto deduct a reasonable suit fee. The respondent would account to its customer for the sum received from the attorney, less a six per cent commission, not participating in the suit fee of the attorney and assessing no service charge of any kind other than a commission of six per cent. About this time the attorney retained nine per cent of the amount collected and the respondent six per cent of that amount. In other words, the respondent actually received forty per cent of the total fee that the customer paid and the attorney received sixty per cent of that fee.

The agreed statement of facts were supplemented by exhibit illustrative of how the business was conducted. For example, a letter dated June 26, 1934, written to the customer stated ''That this item, too, is in the hands of our attorney and we expect to have some report for you in the next few days.'' Again on November 14, 1934, the respondent wrote the attorney selected by it in regard to another account as follows: ''Client has decided to have you proceed with the filing of suit as you recommended in your letter of November 5.'' In several other exhibits the respondents refer to the customer as client.

We have already held a corporation cannot practice law. ''As it cannot practice law directly, it cannot do so indirectly, by employing competent lawyers to practice for it, as that would be an evasion which the law will not tolerate.'' [2 R. C. L. 946.]

Up until the time the respondent adopted its present method of doing business, October 23, 1935, there is no doubt that it was engaged in the practice of law. While it did not file any suits to enforce the collection of the account, it selected the attorney and held itself out to its customer that if it could not collect the account without legal process it would enforce the collection through the use of associate attorneys. It is to be remembered that the respondent selects the attorney to file the suit. It tells him in advance what his fee will be if he is successful in making the collection. It is true the attorney could refuse to take the collection on the fee named, but if he did, he knows the claim will probably be sent to another attorney. All communications from the attorney are sent to the respondent and not the client. In handling the correspondence that passed through its hands it occupies the position of a censor. The confidential relation between attorney and client is lacking. In short, the attorney is the agent of the respondent, and not of the client. The duty the attorney owes his client is thereby destroyed, because the attorney's devotion to the client's interest is not uninfluenced by the duty he owes the respondent. This relationship was condemned in the case of People v. People's Trust Co., 167 N. Y. Supp. 767, wherein that court said:

''The relation between attorney and client is confidential in the extreme. The attorney is under all the obligations attached to a

fiduciary relation, and above all things he owes undivided loyalty to his client, unhampered by obligations to any other employer. These duties are enforced by the drastic remedy of disbarment proceeding, a measure outside of and in addition to other legal remedies. An attorney may not divulge confidential communications to his clients or the advice given thereon. It is obvious that the intervention of a corporation, the general employer of an attorney, between him and his client, is destructive of this necessary and important relation. There can be no longer uninfluenced devotion to the client's interests. There exists along with, and necessarily influencing, the devotion to the client, the duty which the attorney owes to his general employers. Divided obligations in trust relations are obnoxious to the law, and in none more so than in that of attorney and client.''

██ Moreover, it appears from the record that the respondent threatened debtor that it would enforce the collection by suit if the claim was not paid. Such practice has been condemned by the Supreme Court of Alabama in the case of Berk v. State, 142 So. 832.

The respondent split fees with attorneys who were engaged by it to collect accounts for its customers. The practice is specifically condemned by Section 11694, Revised Statutes 1929, which is as follows:

''It shall be unlawful for any licensed attorney in the State of Missouri to divide any fees or compensation received by him in the 'practice of law' or in doing 'law business' with any person not a licensed attorney or any firm not wholly composed of licensed attorneys, or any association or corporation, and any person, firm, association or corporation violating this section shall be deemed guilty of a misdemeanor. . . .''

''It must be remembered that we are construing a statute enacted under the police power and primarily intended to protect the public from rendition of certain services, deemed to require special fitness and training, on the part of those performing the same, by persons not lawfully held to possess the requisite qualifications. While its penal provision should be strictly construed, the statute as a whole should be interpreted, if possible, so as to effectuate the legislative intent.'' [State ex inf. Miller v. St. Louis Union Trust Co., 335 Mo. 845, 74 S. W. (2d) 349, 357.] The public policy of this State as shown by the above statute prohibits the splitting of fees between an attorney and a lay agency.

''Ordinarily, a contract between an attorney and one not an attorney, providing that the latter shall procure the employment of the former by a third person for the prosecution of suits to be commenced in consideration of a fee to be procured or collected therein, is void as against public policy, independent of statutes prohibiting same. [See Gammons v. Johnson, 76 Minn. 76, 78 N. W. 1035; Langdon v. Conlin, 67 Neb. 243, 93 N. W. 389, 60 L. R. A. 429, 108 Am. St. Rep. 643; Alpers v. Hunt, 86 Cal. 78, 24 Pac. 846, 9 L. R. A.

483, 21 Am. St. Rep. 17.]'' [Ford v. Munroe (Tex. Civ. App.), 144 S. W. 349.]

So we see, regardless of the above statute, it is against public policy for a lay person to share a fee with an attorney.

■ As above stated, a lay person can legally be appointed an agent to select an attorney for a third person. But as we see the facts in this case, that is not what the respondent does. It does not act as a mere agent in selecting an attorney for the creditor. In the first place the respondent receives claims for collection and those claims, that it is unable to collect, it turns over to an attorney for collection and it retains an interest in the fee paid by the creditor. Legal ethics prohibits the lawyer from soliciting the claims, but in the case at bar the respondent, a corporation, solicits the claims and turns them over to an attorney to institute legal proceedings to enforce the collection of these claims, which the respondent does not have the power to do. [Midland Credit Adjustment Co. v. Donnelley, 219 Ill. App. 271, 277.]

In other words, one can employ an attorney through a lay agent or agency, if the attorney is solely responsible to the client, but the agent or agency does not have a right to make a business of soliciting claims, and then farming them out to lawyers for collection as the respondent does in conducting its business.

■ Nor do we think that in the respondent's present method of doing business there is any material difference from the way the business was previously conducted. It is a mere change in form and not in substance. The respondent no longer states to the debtor it will file suit if the claim is not paid, but states that the creditor will file suit. In the form letter of transmittal from the creditor to the respondent it is stated that respondent's services ''shall not include legal work.'' But we think under the present method the respondent renders legal service to the creditor. Where it is necessary to place the claim in the hands of an attorney for collection, the respondent now asks the creditor to select one, however this is rarely done, and if the creditor does not do so then the respondent does. In the letter sending the claim to the attorney, the respondent states that it is acting as an agent for the creditor. The letter, also states the fee the attorney is to receive, which is sixty per cent of the fee the creditor pays. When the collection is made the attorney deducts his fee and transmits the balance to the respondent, who then deducts the forty per cent of the fee charged the customer and transmits the rest to the creditor. For example, on claims of $500, the customer pays fifteen per cent to get it collected, of which the attorney's fee is sixty per cent and the respondent's forty per cent. The attorney is told in advance that his fee is nine per cent of the amount collected and he knows that the respondent will retain six per cent of the amount collected. This is substantially the original practice. There the fee

was fifteen per cent of the amount collected and the attorney received nine per cent of this amount or sixty per cent of the fee, and the respondent six per cent of the amount collected or forty per cent of the fee. Whether under the present method or under the original method of doing business the creditor paid fifteen per cent of the amount collected. We see no difference whether the attorney was told his fee would be nine per cent of the amount collected or told that the fee was fifteen per cent of that amount of which he could retain sixty per cent of the fee. Under the present method all correspondence is still conducted between the attorney and the respondent and not between the client and the attorney. We think that under either method the attorney is the agent of the respondent and not the creditor.

We think the change of method in doing business is a mere change in terminology. We are concerned only with the substance of the transaction under review. ". . . Courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty, indeed, are under a solemn duty, to look at the substance of things." [Mugler v. Kansas, 123 U. S. 623, 661.]

■ We therefore, conclude that the respondent has the right to collect debts for others provided it does not employ an attorney or promise to employ one, or threaten the debtor with suit if he does not pay. If collections cannot be made without the services of an attorney, the respondent should return the claim to the creditor who should be free to select and employ his own attorney. The respondent should not engage directly or indirectly, in the business of employing an attorney for others to collect claims or to prosecute suits therefor, nor have any interest in the fee earned by the attorney for his work.

■ This court has adopted the canon of ethics of the American Bar Association as rules of conduct of attorneys for this State, which are found in our Rule 35. Canon 34 of this rule is as follows:

"No division of fees for legal services is proper, except with another lawyer, based upon a division of service or responsibility. But sharing commissions between forwarder and receiver, at a commonly accepted rate upon collections of liquidated commercial claims, though one be a lawyer and the other not, is not condemned hereby, where it is not prohibited by statute."

. It is urged that in the adoption of Cannon 34 by this court we expressly approved the sharing of fees between a licensed attorney and a lay collector such as respondent. We have already seen that Section 11694, supra, prohibits an attorney and a lay person from dividing an attorney's fee. Canon 34 expressly provides that such division of fees are permissible except in those states "where it is not prohibited by statute." In view of that statute the respondent's position cannot be sustained.

Respondent contends a large part of its business arises from transaction in interstate commerce, and that to prohibit the respondent from collecting the purchase price of interstate sales is seriously and gravely to interfere with and tends to hinder and restrain commerce between the states. We are of the opinion that the respondent cannot practice law in this State even though the collection it handles arises out of interstate commerce. [In re Morse, 126 Atl. 550, 36 A. L. R. 527.] The right to practice law is a privilege or franchise not open to every person, but only to those who are qualified and licensed by this court. The Federal Constitution protects only rights common to all citizens. [Crutcher v. Kentucky, 141 U. S. 47, 57.] It therefore, follows that the Federal Constitution does not give the respondent a right to practice law in this State.

"The character of judgment in a *quo warranto* case is largely within the discretion of the court." [State ex inf. Miller v. St. Louis Union Trust Co., supra.]

From the record it is apparent that the respondent has in good faith tried to comply with the law of this State in the conduct of its business. We will adopt the recommendation of our commissioner that the respondent be fined the sum of $1 and the costs herein. Therefore, it is ordered and adjudged that respondent pay a fine of $1 and the cost herein, and then henceforth cease and desist the aforesaid illegal practices and conduct its business according to law on penalty of the forfeiture of its charter and franchise.

All concur.