**In re ALLSTATE INSURANCE COMPA-NY, an Illinois insurance corporation, Respondent.**

No. 63975.

Supreme Court of Missouri, En Banc.

Jan. 13, 1987.

Ernest H. Fremont, Jr., Bert S. Braud, Kansas City, for informant.

Darrell L. Havener, Kansas City, Alex Bartlett, Jefferson City, Jeffrey Lennard, Chicago, Ill., for respondent.

Robert O. Hetlage, P. Terence Crebs, Matthew D. Menghini, St. Louis, for amicus curiae Nat'l Assn. of Independent Insurers, et al.

## ORIGINAL PROCEEDING ON INFORMATION

BLACKMAR, Judge.

The respondent, Allstate Insurance Company, is a liability insurer which sometimes assigns attorneys in its full-time employ to defend its insured in civil litigation. The Advisory Committee brought an action in this Court charging (1) that the use of employee attorneys in this manner violates § 484.020(1), RSMo Supp.1984, in that it constitutes the practice of law (§ 484.-010(1), RSMo 1978) and the doing of law business (§ 484.010(2), RSMo 1978) by a corporation; and (2) that there are impermissible conflicts of interest between the insurer and the insured, in violation of various Rules of Professional Conduct, if an employee of the insurer represents the insured in litigation. We conclude that neither of these contentions has merit, and so dismiss the information.

The case was heard before Judge Ronald M. Belt as Master. He recommended dismissal but, of course, the ultimate decision is ours. We have jurisdiction to determine questions relating to unauthorized practice of law. *In re Thompson,* 574 S.W.2d 365 (Mo. banc 1978).

The essential facts are stipulated, as follows:

5. Allstate is contractually obligated under its automobile liability insurance

policies issued in the State of Missouri to provide a defense for its insureds when bodily injury and property damage liability lawsuits are brought against Allstate's insureds in any court, state or federal.

6. Allstate employs attorneys licensed to practice law in Missouri on a full-time salaried basis to defend its insureds in certain lawsuits brought in the federal and state courts of Missouri involving claims against said insureds for personal injuries and property damage *when such alleged injuries or damages are covered by the policy of insurance issued by Allstate to its insured.*

7. All salaried trial counsel employed in Missouri by Allstate are full-time employees of Allstate who are duly licensed to practice law in Missouri and are in good standing to practice law under Missouri Rules. (Emphasis supplied).

Both parties agree that no contested factual issues remain and that the decision is purely legal.

I. *Practice of Law by Corporation*

Section 484.010(1), RSMo 1978, defines the "practice of law" as follows:

1. The **"practice of law"** is hereby defined to be and is the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court of record, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies.

Section 484.010(2) likewise defines "law business"

2. The **"law business"** is hereby defined to be and is the advising or counseling for a valuable consideration of any person, firm, association, or corporation as to any secular law or the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular rights or the doing of any act for a valuable consideration in a representative capacity, obtaining or tending to obtain or securing or tending to secure for any person, firm, association or corporation any property or property rights whatsoever.

Section 484.020(1), RSMo Supp.1984, reads as follows:

No person shall engage in the practice of law or do law business, as defined in section 484.010, or both, unless he shall have been duly licensed therefor and while his license therefor is in full force and effect, nor shall any association or corporation, except a professional corporation organized pursuant to the provisions of chapter 356, RSMo, engage in the practice of the law or do law business as defined in section 484.010, or both.

To the informants, the issue is very simple. They argue that the defendant is a corporation which is not a professional corporation, and that its employees practice law by preparing pleadings and appearing in court on behalf of insured. It follows, they say, that the respondent itself is practicing law, because the acts of its employees are the corporation's acts.

This Court considered the nature of the liability insurance business many years ago, in *Liberty Mutual Insurance Co. v. Jones,* 344 Mo. 392, 130 S.W.2d 945 (banc 1939). That case dealt with the adjustment stage, before suit was filed, and held that employees of the insurer, in negotiating settlements of claims against its insured, did not engage in the practice of law or in the doing of law business. We concluded as follows:

1. The Court declares the law to be that the relationship existing between an appellant company and the person to whom it issues any of its forms of casualty insurance policies is that of insurer and insured, and it is not that of attorney and client.

\* \* \* \* \* \*

10. The court declares the law to be that the issuance by an appellant company of a policy of liability insurance, and

the act of such company, in accordance with the terms of such policy, in interceding by an attorney at law and maintaining a defense in behalf of the insured when a claim is made or a suit is brought against the insured, do not constitute the practice of law or the doing of law business, though the amount sued for exceeds the amount of insurance coverage.

130 S.W.2d at 961–62.

█ It is argued that *Liberty Mutual* did not deal with the filing of pleadings or with appearances in cases in court, and so does not answer the question now before us. Its reasoning nonetheless applies. An insurer has a very substantial interest in litigation involving its insured, and is entitled to retain counsel of its own choosing to protect its interest. The opinion recognized that the relationship between insurer and insured is of relatively recent origin and of a special nature which may not fit readily into traditional conceptualization.

The weak point in the informants' argument is that they quite agree that the services in question may properly be rendered by outside counsel hired and paid by the insurance company. They indeed seek to obtain the business for private practitioners, by denying it to employed attorneys. If, however, the respondent practices law by assigning employee attorneys to the defense of claims, it would just as logically be said to practice law by retaining independent contractors as counsel for its insured. This is shown by *State ex rel. McKittrick v. C.S. Dudley & Co.*, 340 Mo. 852, 102 S.W.2d 895 (1937), in which a collection agency retained attorneys to bring suit on debts in which chasing had not been successful. The attorneys were not employees of the corporation, but rather private practitioners. We found that the corporation was practicing law, because it received a percentage of the fees charged by the attorneys. The primary purpose of § 484.020(1) is to preclude a corporation with non-professional shareholders from having a proprietary interest in or sharing in the emoluments of a law practice. In this respect it makes no difference whether the legal services are rendered by employed lawyers or by independent contractors.

Counsel for the informants could not cite us to a single instance in the law in which a person may lawfully do something through an independent contractor which could not be done through an employee. By the standard definition, one retains an independent contractor to obtain a desired result.[1] Responsibility for the result sought necessarily follows.

The problem now before us has been considered in numerous judicial and professional opinions. With the exception of *Gardner v. North Carolina State Bar*, 316 N.C. 285, 341 S.E.2d 517 (1986), these authorities hold that an insurance company which defends cases through its employees does not engage in the practice of law.[2]

The informants commend *Gardner* to us, but we are not persuaded. The North Carolina court, for one thing, would apparently.

1. See *Barnes v. Real Silk Hosiery Mills*, 341 Mo. 563, 108 S.W.2d 58, 61 (1937).

2. See *Joplin v. Denver-Chicago Trucking Co.*, 329 F.2d 396 (8th Cir.1964); *In re Proposed Addition to the Additional Rules Governing the Conduct of Attorneys in Florida*, 220 So.2d 6 (Fla.1969); *Strother v. Ohio Casualty Ins. Co.*, 5 Ohio Supp. 362, 14 Ohio Op. 139 (Common Pleas Ct. 1939); ABA Comm. on Professional Ethics and Grievances, Formal Op. 282 (1950); Alabama State Bar, Ethics Op. RO–81–533 (1981); Arizona State Bar Ass'n Ethics Comm., Op. 75–4 (1975); New York State Bar Ass'n Professional Ethics Comm., Op. 109 (1969); State Bar of Texas Comm. on Interpretation of Canons of Ethics, Op. 167 (1958); Virginia State Bar Standing Comm. on Legal Ethics, Op. 598 (1985) (Approved by Va.Sup.Ct. 1985). *See also Coscia v. Cunningham*, 250 Ga. 521, 299 S.E.2d 880 (1983); *Kittay v. Allstate Ins. Co.*, 78 Ill.App. 335, 33 Ill.Dec. 867, 397 N.E.2d 200 (1979); *Utilities Ins. Co. v. Montgomery*, 134 Tex. 640, 138 S.W.2d 1062 (Comm'n App. 1940); *United Services Automobile Ass'n v. Zeller*, 135 S.W.2d 161 (Tex.Civ.App.1939); State Bar of Michigan Comm. on Unauthorized Practice of Law, Op. (Sept. 22, 1959); New York State Bar Ass'n Unlawful Practice of Law Comm., Op. 13 (1970). These latter authorities reach the same conclusion, but do so by relying in part on statutes which define the unauthorized practice of law in a less restrictive way than our statute does.

reject the rationale of *Liberty Mutual.* The case also assumes that classic conflict of interest situations would arise which, as Part II of this opinion demonstrates, are not present here. We prefer to follow the great weight of authority, which is consistent with our earlier holding.

The informants append to their brief statistics compiled by the respondent and tending to show that defense of claims through employed attorneys is more economical than retention of private practitioners. From this showing they make the astonishing argument that the respondent derives financial advantage by employing lawyers and therefore is engaged in the "law business" for valuable consideration. The legislature, in enacting the governing statutes, surely had no purpose of dissuading insurance companies from pursuing economies in the defense of claims.

■ The statutes in issue were enacted in 1915, when automobiles were relatively few and the liability insurance industry was in its infancy. The only change has been to allow lawyers to form professional corporations. We conclude that the legislature, in enacting these statutes, did not intend to limit or restrict liability insurers in the selection of attorneys to defend claims against their insured, and that the actions described in the stipulation constitute neither the practice of law nor the doing of law business.

## II. *Conflicts of Interest*

The informants also argue that a liability insurer cannot assign its own employed attorneys to defend claims against its insured without introducing impermissible conflicts of interest. If this is so we would have a duty to act under our inherent power to regulate the practice of law and to prohibit conduct which is inconsistent with ethical practice, even though we find no statutory violation. It is not necessary for purposes of this opinion to determine the precise overlap of the authority of the legislature and that of this Court.

The information was filed when the Code of Professional Responsibility was in force.

Since that time the new Rules of Professional Conduct have been adopted as a part of our Rule 4. The new rules do not alter the underlying principle that an attorney owes undivided loyalty to the client. The material provisions of the present rules are as follows:

**Rule 1.7. Conflict of Interest: General Rule**

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected;

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

**Rule 5.4. Professional Independence of a Lawyer**

\*     \*     \*     \*     \*     \*

(c) A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services.

■ The master expressly found that the respondent makes use of employed lawyers in defending its insured only when there is no question of coverage, and when the claim is within the policy limits. It thereby eliminates situations in which conflict of

interest is inherent. This limitation is established by stipulation, and we have no authority to proceed against the respondent for conduct it does not engage in. If the respondent should go beyond the activities described in the stipulation its actions could be challenged in appropriate proceedings.

Even though the insured is the only named defendant, the insurer has a vital interest. When coverage is admitted and adequate the interests of the insurer and the insured are congruent. Both are interested in disposing of the case on the best possible terms. Only the insurer's money is involved. Even though the insured may be interested in minimizing liability and damages, perhaps because of apprehension about insurance coverage and rates, this concern introduces no conflict and there is no reason why the same lawyer may not represent both interests. *See Helm v. Inter-Insurance Exchange*, 354 Mo. 935, 192 S.W.2d 417 (banc 1946), which recognizes that defense counsel retained by an insurance company actually represent both insurer and insured.

The insurer has the contract right to direct the litigation against its insured. It may evaluate claims and decide whether to settle or try. It may make economic decisions without the assent of the insured. The insured may want a quick settlement to eliminate further demands on time and energy, but the insurer does not have to settle unless a satisfactory offer is forthcoming. Or the insurer may accept a settlement offer even though the insured wants to go to trial to establish freedom from fault.[3] The insurer may decide what to spend in defense, what discovery is to be had, and what experts to hire. It also has the right to select counsel to defend its interests.

The informants tender a hypothetical case in which the insurer has information in its files favorable to the insured which it is unwilling to reveal. They suggest that a private practitioner would be able to subpoena this material whereas an employed lawyer would be unable or unwilling to exert any pressure or use legal process. The example is so nebulous as to be of no practical value. The insurer would have no motive to withhold anything which might aid the insured's case and help in reducing its exposure. Informants' brief and argument fail to demonstrate any substantial possibility of a conflict. Nor does the extensive literature show how the insured might sustain prejudice.[4]

The informants, citing *Gardner*, point out that any judgment is against the insured personally, that process of execution and garnishment may be used, at least until the insurer makes payment, and that the insured must bear the liability personally if the insurance company becomes insolvent. They do not show why this situation would be different if outside counsel, rather than employee attorneys, were retained for the defense.

Informants argue that the insurer has much more control over its employees than it does over retained lawyers in private practice. This circumstance, even if true, is of no significance in a situation in which there is no temptation to favor the insurer's interest over that of the insured.

---

**3.** Section 303.190.6, RSMo Supp. 1984 provides: "Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

  *   *.   *   *   *   *

(3) The insurance carrier shall have the right to settle any claim covered by the policy, . . . .

**4.** *See* Alsobrook, *Conflicts Between the Insurer and Insured,* 48 Ins.Couns.J. 165 (1981); Dondanville, *Defense Counsel Beware: The Perils of Conflicts of Interest Revisited,* 29 Trial Law. Guide 249 (1985); Mallen, *A New Definition of*

*Insurance Defense Counsel,* 53 Ins.Couns.J. 108 (1986); Ryan, *Confidentiality, Disclosure and Discoverability in the Representation of Insurer and Insured,* 48 Ins.Couns.J. 163 (1981); Schwartz, *Ethical Responsibilities of Defense Counsel in Defending Insureds,* 64 Mich. B.J. 290 (1985); Spencer, *House Counsel and the Unauthorized Practice of Law,* 39 Pa.B.A.Q. 64 (1967). While these authors warn that there is a possibility of conflicts of interest between insurer and insured, their commentaries do not provide any examples of conflicts which might arise in the situations shown by this record.

■ Employed lawyers are bound by the same rules of professional conduct as are independent practitioners. If a conflict appears, the lawyer, employed or retained, must immediately resolve it by terminating representation of one or both parties. *Helm v. Inter-Insurance Exchange, supra.*[5] If a client suffers damage because his attorney represents conflicting interests, a civil action is available. If the attorney is an employee, the employer is undoubtedly liable jointly and severally, which would not be the case if an independent contractor were retained. The lawyers involved are also subject to professional discipline. There is no basis for a conclusion that employed lawyers have less regard for the Rules of Professional Conduct than private practitioners do.

The informants simply fail to demonstrate any conflict of interest which would justify our interfering with the respondent's choice of counsel to protect its proper concerns in the legal representation of its insured in damage suits. The information is dismissed.

HIGGINS, C.J., and WELLIVER and ROBERTSON, JJ., concur.

RENDLEN, J., dissents in separate opinion filed.

DOUGLAS W. GREENE, Special Judge, dissents in separate opinion filed.

BILLINGS, J., dissents and concurs in separate dissenting opinion of RENDLEN, J.

DONNELLY, J., not sitting.

RENDLEN, Judge, dissenting.

Flying in the face of settled case law the principal opinion today allows a corporation to engage in the practice of the law and by judicial fiat emasculates the statute which mandates that "[no] corporation, except a professional corporation organized pursuant to the provisions of chapter 356, RSMo, [shall] engage in the practice of the law or do law business as defined in section 484.-010, or both." Section 484.020.1, RSMo Cum.Supp.1984; *see also State ex rel. McKittrick v. C.S. Dudley & Co.,* 340 Mo. 852, 102 S.W.2d 895, 898, *cert. denied,* 302 U.S. 693, 58 S.Ct. 12, 82 L.Ed. 535 (1937); *State ex inf. Miller v. St. Louis Union Trust Co.,* 335 Mo. 845, 74 S.W.2d 348 (banc 1934); *Automobile Club v. Hoffmeister,* 338 S.W.2d 348, 354 (Mo.App.1960). Unless the majority means to discriminatorily bestow a privilege upon insurance companies not granted other corporations, such prohibition is now obliterated and any corporation may legally represent parties through its employees because, so saith the majority, such activity is not the practice of law by a corporation. How can it be said that a corporation does not engage in the practice of law when it sends its full-time employees into court (employees who are paid by and acting solely under the orders of the corporation) to represent a litigant embroiled in a lawsuit when that litigant is not the corporation but instead is a person not connected to nor in any way a part of the corporation but happens only to have purchased an insurance policy from such corporation?

Until today it had long been held that a corporation may *not practice law* either directly or indirectly by employing attorneys to practice for it. *State ex rel. McKittrick v. C.S. Dudley & Co.,* 102 S.W.2d at 900. The acts of its employees are necessarily acts of a corporation as "[c]orporations are artificial beings which can only act by agents and are responsible for the acts of their agents when done in

---

5. *Helm* shows that a lawyer in private practice is not always required to prefer the insured's interest when a conflict appears. There the insured's son was sued. He told the attorney retained for him by the insurance company that he was 16 years old when the accident happened, and the attorney prepared the case for trial. Questions on voir dire indicated that the defendant was 15 at the time of the accident and therefore not covered by the policy. The lawyer verified the defendant's age through the public records and then reported to the insurance company, which instructed him not to proceed with the defense unless a reservation of rights were forthcoming. This Court held that the lawyer and the insurance company acted with entire propriety.

the exercise of their agency." *Standard Meat Co. v. Taco Kid, Inc.*, 554 S.W.2d 592, 595 (Mo.App.1977); *see also Fowler v. Park Corp.*, 673 S.W.2d 749, 754 (Mo. banc 1984). Hence, when a corporation's employees, in the course of their employment, perform legal services for the corporation, their acts are the acts of the corporation, so that in law the corporation itself is performing the acts. *Gardner v. North Carolina State Bar*, 316 N.C. 285, 341 S.E.2d 517, 520 (1986).

It defies logic to suggest that by representing litigants, in the manner described by the record, staff counsel for such insurance companies are not engaged in the practice of law during the course of such employment. Their acts are the acts of the insurance company, which therefore is engaged in the practice of law. Because corporations, other than "professional corporations," are prohibited from engaging in the practice of law, § 484.020.1, respondent's practice of law is necessarily unauthorized.

There is however an important and valid distinction between a corporation employing "house counsel" as opposed to "outside independent counsel" to represent a third party. Where an insurance company provides its policyholders outside counsel, who is effectively an independent contractor, such is not prohibited so long as the attorney complies with relevant ethical standards. Surely the majority would agree that a layman may hire an attorney to represent a third party even though the layman may not himself represent the third party. Why, then, does the majority fail to see the same distinction between a corporation (which like the layman is prohibited from practicing law) hiring outside independent counsel to represent a third party and the insurance company itself representing the third party through its full-time salaried employee?

While a layman may represent himself in court, *Liberty Mut. Ins. Co. v. Jones*, 344 Mo. 932, 130 S.W.2d 945, 955 (banc 1939); *Klingensmith v. Thurman*, 339 S.W.2d 300, 300–301 (Mo.App.1960), a corporation is not prohibited from representing *itself*

through house counsel. However, when an insurance company, such as respondent here, undertakes to represent its policyholder in legal actions, it is not representing itself, instead it represents the insured for it is the *insured* that is the party in name and fact and it is the insured who is represented. The Supreme Court of North Carolina, in *Gardner*, 341 S.E.2d at 520–21, has aptly stated:

> We recognize that insurance companies have an interest in the outcome of litigation when the damages sought are covered by their policies....
>
> ....
>
> If an insurance company, through its employees, appears for an insured, it would be appearing as an attorney for someone else. The company itself is not the party to the action. The insured is the one who is named. Any judgments rendered are rendered against the insured, not against the company. The insured's property becomes subject to attachment to pay such judgment, and he may be called upon to do so if the company fails. Nor are the interests of the insurance company and the insured identical. The insured is solely responsible for any damages in excess of his insurance coverage, and he alone feels the effect of any collateral penalties that result from the litigation.

The *Gardner* court held that an insurer's proposed practice of allowing house counsel, in the course of their employment, to represent its insureds would constitute the unauthorized practice of law. *Id.* at 523. The North Carolina court quite properly concluded that corporations are prohibited from practicing law, that when a corporation's employees perform legal services for the corporation in the course of their employment the corporation is performing the acts and if an insurer through its employees appears for an insured it appears as an attorney for someone else. *Id.* at 520–21.

Respondent and amici curiae direct us to authority from other jurisdictions, as well as several bar opinions, supportive of its use of house counsel. *E.g., Joplin v. Den-*

*ver-Chicago Trucking Co.,* 329 F.2d 396, 396–97 (8th Cir.1964); *In re Proposed Addition to the Additional Rules Governing the Conduct of Attorneys,* 220 So.2d 6 (Fla.1969); *Coscia v. Cunningham,* 250 Ga. 521, 299 S.E.2d 880 (1983); *Kittay v. Allstate Ins. Co.,* 78 Ill.App.3d 335, 33 Ill. Dec. 867, 879, 397 N.E.2d 200, 202 (1979); *Strother v. Ohio Casualty Ins. Co.,* 5 Ohio Supp. 362, 14 Ohio Op. 139 (Common Pleas Ct.1939); *Utilities Ins. Co. v. Montgomery,* 134 Tex. 640, 138 S.W.2d 1062, 1064–65 (1940); ABA Comm. on Professional Ethics and Grievances, Formal Op. 282 (1950). Though the cited authority would seem to excuse and permit certain practices not permitted by Missouri statutes nor condoned by our prior decisions, these cases in large part are distinguishable and in some instances stem from statutes dissimilar from § 484.020.1; indeed, some involve statutory exceptions not found in Missouri. *E.g., Coscia v. Cunningham,* 299 S.E.2d at 882 (corporations are not prohibited from employing attorneys "in and about their own immediate affairs"); *Kittay v. Allstate Ins. Co.,* 33 Ill.Dec. 869, 397 N.E.2d at 202 (a corporation is not prohibited from employing attorneys "in and about its own immediate affairs ... *or in any litigation in which any corporation may be interested by reason of the issuance of any policy or undertaking of insurance, guarantee or indemnity*"); *Utilities Ins. Co. v. Montgomery,* 138 S.W.2d at 1064 (an insurance company is not prohibited "from causing to be defended, or prosecuted, or from offering to cause to be defended, through lawyers of its own selection, the insureds or assureds in policies issued or to be issued by it, in accordance with the terms of such policies"). We must decide the issue under the law of Missouri and in so deciding I find none of the analyses in those authorities relied on by respondent and amici curiae to be as persuasive as the analysis in *Gardner.*

The principal opinion cites *Liberty Mut. Ins. Co. v. Jones,* 130 S.W.2d 945, as supportive of its position, but that case simply did not consider or decide the issue now before the Court. In *Liberty,* the Court explicitly stated, *id.* at 951, that, aside from a pleading issue, it was confining itself to the point whether certain acts performed by the insurance companies through *lay employees* (claims adjusters) constituted "law business" or the "practice of law," and held that: a claims adjuster may investigate the facts and circumstances relating to a casualty or claim and report to his insurance company employer the facts ascertained; that such claims adjuster may fill in, on a prepared form, the release to be executed by a claimant; a claims adjuster may repeat to a claimant what his company's attorney has advised as to liability, but that he shall not state or act upon his own opinion as to legal rights of the company, insured or claimant; a claims adjuster may in a report to his employer express an opinion as to the monetary extent of the liability of his employer or the insured, but shall not pass on any question of law or legal liability; a claims adjuster or investigator may in a report to his employer state the opinion given by the company's counsel on any question of liability upon any claim; a claims adjuster or investigator may participate in "informal conferences" before the Workmen's Compensation Commission so long as he does not act upon his own opinion as to legal rights; a lay adjuster or claims manager may determine for his insurance company employer the pecuniary limit which his employer will be willing to offer in settlement so long as he does not determine the legal liability of his employer or its insured; and a lay employee may decide which prepared release form to use in settlement. *Id.* at 961–62; *see also Hoffmeister v. Tod,* 349 S.W.2d 5, 11–12 (Mo. banc 1961). The *Liberty* Court's dictum, 130 S.W.2d at 962, which gratuitously suggests that an insurer may intercede by an attorney to defend an insured in a suit brought against the insured cannot fairly be construed as permitting an insurer to represent its insured by its employees. Instead a more proper interpretation would be that this dictum suggests a liability insurer may provide independent counsel to defend its insured. Today we squarely confront the question of the insurer's prac-

tice of sending its company employees into court to represent a policyholder. Such conduct is contrary to the fixed policies of our state as expressed by the legislature in the statute and to the settled case law prohibiting such practice and should be enjoined.

The injunction should issue for the additional reason that respondent's actions place house counsel in a position of inherent conflict of interest. As observed by the Advisory Committee, while independent outside counsel, hired by another to represent a third party, faces the possibility of conflicting interests, this risk is immeasurably heightened in the case of house counsel, who is confronted not only with the appearance of conflict and professional impropriety, but with certain and unavoidable conflicts. An attorney attempting to serve two masters with conflicting interests can provide neither the loyalty they deserve. *State v. Crockett*, 419 S.W.2d 22, 29 (Mo. 1967).

Here house counsel is simply an insurance company employee on the regular payroll and paid solely by respondent corporation. He is compensated for his services exclusively by the corporation whether those services are performed directly to the corporation or for services rendered by the corporation for an insured. House counsel must answer to supervisors within the company who are not necessarily attorneys. Within the corporate framework house counsel will in due course necessarily face the unenviable choice of exercising the required independent, professional judgment or risk losing his job; manifestly, the insurance company is the sole "boss" of its employees.

> The independence required on the part of the attorney, the insurance company House Counsel does not and cannot have. Should an outside lawyer refuse to perform an act which he believes he cannot ethically do for his client, he will possibly lose on[l]y one client of many in the case of a disagreement; on the contrary the temptation would be much greater to override his conscience if he would lose his only client, i.e., his only livelihood.

Spencer, *House Counsel and the Unauthorized Practice of Law, 1967*, 39 Pa.B. A.Q. 64, 70 (1967).

From the relationship between insurer, insured and insurance defense counsel, a host of "conflict" situations can arise. *See generally* Alsobrook, *Conflicts Between the Insurer and Insured*, 48 Ins.Couns.J. 165 (1981); Dondanville, *Defense Counsel Beware: The Perils of Conflicts of Interest Revisited*, 1985 Trial Law.Guide 249; Mallen, *A New Definition of Insurance Defense Counsel*, 53 Ins.Couns.J. 108 (1986); Ryan, *Confidentiality, Disclosure and Discoverability in the Representation of Insurer and Insured*, 48 Ins. Couns.J. 163 (1981); Schwartz, *Ethical Responsibilities of Defense Counsel in Defending Insureds*, 64 Mich.B.J. 290 (1985). The many readily apparent conflicts include issues of coverage, settlement, trial conduct, and confidentiality.

> Counsel who is a salaried employee of an insurance company has added relationships which enhance the prospects of a subjective bias in favor of the insurer. Unlike outside counsel, staff counsel is financially dependent upon one client. Advancement in salary and position requires satisfying that client. Control ultimately lies with the attorney's superiors, presenting a risk if the supervisor has corporate responsibilities other than for the insured's representation. The employed attorney may be concerned that the insurer will not be pleased if he engages in a course of action detrimental to its economic interests because of perceived ethical obligations. These forces may combine to unduly influence the employee's loyalties in favor of the employer.

Mallen, *supra*, at 110–11. On the other hand, while independent defense counsel is not unaware that the insurer pays his bills and it is the insurer that has tendered him the insured as his client, Dondanville, *supra*, at 253, the hazard of choosing between conflicting interests is sufficiently reduced in the case of independent counsel so that no blanket prohibition against such

representation is required. However, the relationship between insurer and house counsel differs qualitatively and it is unfair to the public, whom the ethical standards are designed to protect, to proceed on a case-by-case basis, hoping that house counsel, when the omnipresent hazard of conflict comes into play, will struggle free of his employer's influence and ethically perform his duty to the insured. Accordingly house counsel should not be permitted to represent the insured, Rule 1.7(b) of Rule 4, for not only is there a stark appearance of impropriety but the danger is too great that the insurer will regulate or influence his professional judgment. Rule 5.4(c) of Rule 4.

In sum, I would decline to follow the suggested authority which does not distinguish between an insurer's use of staff counsel and outside independent counsel. It is not sufficient, as the insurance company argues, that it can satisfy the inherent "conflict of interest problem" or the obvious "ethical consideration" by adopting its in-house policy which provides *inter alia* that it will not use house counsel in actions in excess of policy limitations or where a reservation of rights is asserted by respondent. The principal opinion ignores the conflict and confidentiality problems that are certain to arise in a wide variety of situations not contemplated by the insurance company's in-house policy statements and, further, the majority seems not to understand that nothing precludes any insurance company (as respondent here) from changing in-house policy when it chooses. It goes without saying that respondent is not bound by our rules of professional conduct and the majority opinion by this sweeping change wipes away the protection for the citizens of Missouri which has been carefully developed over the years by statute, case law and court rule.

The principal opinion, in choosing not to apply the legal prohibition against corporations practicing law on the ground that such prohibition is one of long standing in the law, abruptly turns the hallowed principle of *stare decisis* upon its head. The principal opinion unduly fixes upon the proposition that "the informants could not cite us to a single instance in the law in which a person may lawfully do something through an independent contractor which could not be done through an employee." In its groping for a rationale to justify its conclusion, the majority misses the mark. The question is not whether house counsel can lawfully do the work or perform the service (as posed by the majority) but instead the real question, which the majority blithely skips around, is whether an insurance company is practicing law when it sends its staff employee into court to represent a policyholder who has been sued. The majority brushes aside the standing prohibition against insurance companies practicing law and does not give adequate consideration to the profound conflict of interest and ethical problems inherent in the double representation of an insurance company staff employee who is sent to represent a policyholder in litigation involving that policyholder. The majority by its above-mentioned assertion also immediately comes face to face with the inevitable appearance of impropriety which rises to cloud the result the majority imposes on the practice of the legal profession and, as Judge Greene suggests in his well-reasoned dissenting opinion, if there is something palpably unfair about this then the legislature might be the better forum in which to address the issue. The prohibition against corporations practicing law is designed to protect the public against divided loyalties and improper influence upon professional judgment, and the public should not be stripped of this protection on an unsubstantiated belief that to keep this safeguard might in the end lead to higher premiums. First, there is absolutely no evidence in the record that, in the competitive market place, respondent will lower its rates if permitted to practice law in Missouri, and, furthermore, ineffective, unethical representation cannot be justified even if less expensive than effective representation.

Respondent's practice of sending house counsel to represent its insureds should be enjoined because by so doing it engages in the unauthorized practice of law. For these reasons I must respectfully dissent.

DOUGLAS W. GREENE, Special Judge, dissenting.

In 1915, Missouri, by statute, banned the corporate practice of law. 1915 Mo.Laws 99, 100. Successor statutes continuing such ban have been in force ever since, with an exemption being granted in 1963, which provided that attorneys, as well as members of nine other professions, could form professional corporations to render the same type of service the individual licensed incorporators were entitled to perform under Missouri law. *See* Chapter 356 of the Revised Statutes of Missouri. Allstate is admittedly not a professional corporation, as that term is defined in Chapter 356. It is a foreign corporation whose purpose, as far as this litigation is concerned, is selling liability insurance and servicing those insurance contracts. As such, Allstate is subject to all applicable Missouri statutes, *Pacific Intermountain Exp. Co. v. Best Truck L., Inc.*, 518 S.W.2d 469, 473 (Mo.App.1974), and is subject to revocation or suspension of its license to do business in this state, if it violates Missouri law. Section 375.881.1(6), RSMo, as amended 1985.

The statutory prohibition against the practice of law by corporations is a legitimate exercise of legislative police power. *State ex rel. McKittrick v. C.S. Dudley & Co.*, 340 Mo. 852, 862, 102 S.W.2d 895, 901 (banc), *cert. denied*, 302 U.S. 693, 58 S.Ct. 12, 82 L.Ed. 535 (1937); *State ex inf. Miller v. St. Louis Union Trust Co.*, 335 Mo. 845, 74 S.W.2d 348, 357 (banc 1934).

Allstate, like any other corporation not exempted by Chapter 356, is bound by the plain, simple language of § 484.020.1, RSMo Supp.1984, which states that *no* corporation, with the exception noted shall engage in the practice of law. The practice of law is defined in § 484.010, RSMo 1978,

as, among other things, appearing as an advocate, in a representative capacity, in proceedings pending in Missouri courts of record. Allstate has admitted that it is doing this and, by so doing, has admitted that it is practicing law. By the terms of § 484.020.1, it has no legal authority to do so. Violation of the statute has been declared to be a crime. Section 484.020.2. Allstate has announced its intention to continue in its violation of the statute unless enjoined from doing so.

The underlying reason the majority gives for condoning Allstate's practice of law, in violation of Missouri statutes, is their astonishing thesis that the legislature has been asleep at the switch since the parent statute to § 484.020.1 was enacted in 1915, at which time automobiles were relatively rare, and the liability insurance business was in its infancy. Therefore, reasons the majority, it is the court's responsibility to modernize the statute by judicial fiat, so that insurance companies can evade the plain language of the law. The majority conclusion that the legislature has simply ignored a problem that needs solving flies in the face of the record, which shows that the legislature has periodically updated the statute, and made revisions to it, with the latest revision coming in 1982, without deeming it necessary to permit the practice of law by insurance companies.

Regulatory legislation created by judicial intervention erodes the doctrine of separation of powers, and creates unnecessary tension between the judiciary and the legislature. If Allstate sincerely believes that it should, through its employees, have the right to practice law, and that the present legislative ban against it doing so is outmoded and against the public interest, it should go to the legislature and attempt to get the law changed, as a determination of what considerations properly call for the exercise of the state's police power is a legislative, and not a judicial function. *McClellan v. Kansas City*, 379 S.W.2d 500, 505 (Mo. banc 1974).

I believe that the discussion of the relative ethics of salaried lawyer employees of Allstate and private sector attorneys contained in the majority opinion is irrelevant, as no facts are shown in the record that would justify holding for, or against, Allstate on that basis. I can only observe that anyone who believes that in conflict of interest situations, a salaried lawyer employee of Allstate would not place the welfare of the corporation above that of the policy holder, who theoretically he represents, probably also believes in the Tooth Fairy and the Easter Bunny.

I would issue the injunction.

Before GAITAN, P.J., and DIXON and TURNAGE, JJ.