Rosemary **OFFENBACKER**, Respondent,

v.

Alice Jeanette **SODOWSKY** et al.,
Defendants,
and
Earl Gartside Sandusky and Industrial Heating and Plumbing Company of St. Joseph, Missouri, Inc., Appellants.

No. 56650.

Supreme Court of Missouri,
Division No. 2.

Sept. 10, 1973.

Rehearing Denied Oct. 8, 1973.

422

E. J. Murphy, Butler, for respondent.

Brown, Douglas & Brown by Wendell E. Koerner, Jr., St. Joseph, for appellants.

STOCKARD, Commissioner.

Appellants Earl Sandusky and Industrial Heating and Plumbing Company filed this

appeal prior to January 1, 1972 from a judgment against them in the amount of $41,000.

Plaintiff's action was for the wrongful death of her husband which resulted from an automobile collision. We shall set forth the circumstances of the multiple car collision according to plaintiff's version of what occurred.

On December 12, 1969, while operating his English Ford automobile northward on Highway 71 in Andrew County, Missouri, Larry Offenbacker stopped preparatory to making a left turn onto Route Y. His automobile was then struck in the rear by an Oldsmobile automobile operated by Alice Sodowsky. Both automobiles ended up crossways on the highway. Earl Sandusky was operating his employer's pickup truck northward on the highway behind the Sodowsky automobile. He saw the brake lights on the Oldsmobile come on, the rear of the car go up, and the automobile come to a "revolting halt as though it had struck a brick wall." Although he could have stopped his truck before reaching the Oldsmobile, Sandusky turned to the right onto the shoulder of the highway to pass, and in doing so his truck hit the English Ford knocking it into the side of a tractor-trailer truck being operated southward by William Osborne. The English Ford was demolished and Larry Offenbacker was killed.

Plaintiff's submission against appellants was that Earl Sandusky knew or could have known that there was a reasonable likelihood of collision in time thereafter to stop but he failed to do so.

By their first and seventh points appellants assert that the trial court erred in refusing to direct a verdict in their favor because (1) there was a failure of substantial evidence of actionable negligence on the part of Earl Sandusky, and (2) if such negligence was established, it was not the proximate cause of the death of Larry Offenbacker. Appellants argue that there was no evidence (1) of a reasonable likeli-

hood of "such a collision," (2) or that Earl Sandusky had time to have stopped after he knew of a reasonable likelihood of collision, or (3) that failure on his part to stop contributed to cause the death of Larry Offenbacker. Appellants also argue that there was no evidence that Earl Sandusky ever saw the Offenbacker automobile, and they contend that the evidence must show that "the two vehicles were on a collision course," that Sandusky was or could have been aware of such collision course, and that he thereafter had time to take evasive action.

Earl Sandusky was traveling about 50 miles an hour when following the Sodowsky automobile. There was no evidence as to the distance between his truck and the Sodowsky automobile, but he testified that when he saw it come to a "revolting halt" he could have stopped the truck before reaching it. Instead of doing so, he started "steering to the right" and "slammed" on his brakes, but he then "eased off" because of frost on the shoulder of the highway. When he passed the rear part of the Sodowsky Oldsmobile over half of his truck was off the roadway and on the shoulder. He testified that as he was going around the Oldsmobile a great cloud of dust, dirt and rock flew up and blinded his view, and while he was in the cloud of dust he felt an impact which threw his truck to the right. He was off the roadway and completely on the shoulder at the time of the impact.

■ A reasonable likelihood means a reasonable probability, Clark v. Welch, 140 F.2d 271 (First Cir. 1944), and is something less than reasonably certain. Ottgen v. Garey, 41 Ohio App. 499, 181 N.E. 485 (1932). When Sandusky saw the Sodowsky automobile come to a halt under the circumstances he described, he knew or should have known that it had collided with something. He also knew or should have known that colliding automobiles frequently do not remain in the traffic lane where the collision occurred. It is not necessary that a person anticipate an oc-

currence exactly as it happened, Creager v. Chilson, 453 S.W.2d 941 (Mo.1970), and under the circumstances of this case, a jury reasonably could conclude that in the exercise of the highest degree of care Sandusky knew or should have known that if he proceeded toward the occurrence ahead of him instead of stopping, which he said he could do, and attempted to drive to the right of it there existed a reasonable likelihood of collision, either with the Sodowsky automobile or with the object with which it had collided. The jury also reasonably could find that it was the force of being struck by the Sandusky truck that caused the Offenbacker automobile to be knocked into the side of the tractor-trailer where it was demolished. It is immaterial that the Sandusky truck was not the only vehicle which collided with the Offenbacker automobile. Its collision was either a concurrent or successive cause of the injury to Larry Offenbacker which resulted in his death. Glick v. Ballentine Produce Incorporated, 396 S.W.2d 609 (Mo.1965). The trial court did not err in refusing to direct a verdict for appellants, and it did not err in giving respondent's verdict directing instruction on the basis that it was not supported by the evidence.

Appellants next challenge Instruction No. 6 on the basis that "said instruction was an improper, unwarranted and unnecessary modification of MAI 17.01, 17.04, 19.01 and 20.01 in that the words 'to have stopped' were modified to read 'to stop.'"

The issue presented is that MAI 17.04 provides as follows: "Defendant knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter *to have * * * stopped.*" (Italics added). However, Instruction No. 6 used the words, "in time thereafter to stop."

Appellant asserts that there was no necessity to modify MAI 17.04 in the respect which was done, and pursuant to Brown v. St. Louis Public Service Company, 421 S. W.2d 255 (Mo. banc 1967), the modification constituted prejudicial error. Respondent admits that there is "no adequate explanation as to why this modification was made," except that it was an oversight.

Appellant argues that respondent has not met the burden imposed by the Brown case, supra, to make it "perfectly clear * * * that no prejudice could have resulted from such deviation." They also argue that by phrasing the failure to stop in the present tense rather than in the past tense, as set forth in MAI 17.04, the jury was permitted to reason from hindsight rather than foresight.

The phrase "to have stopped" is in the present perfect tense, and "represents action going on at any time up to the present." The phrase "to stop" is the infinitive of the verb "stop" and is in the present tense. It represents present action. College Handbook of Composition, Woolley and Scott, pp. 222, 223. Therefore, both phrases represent present action, and when used in context with the words in MAI 17.04 they mean the same; the present act of stopping thereafter.

■■ We do not in any way relax the rule announced in Brown v. St. Louis Public Service Company, supra, and any unnecessary modification of MAI should not be made. However, to set forth appellants' contention demonstrates that the modification could not have been prejudicial to appellants.

■ Appellants next assert that the trial court erred in permitting Gary Pittman to testify that he "could not see any hexagon shape bolts" in photographs, previously admitted into evidence, of the Sodowsky automobile. Appellants assert that "this was negative testimony and irrelevant." The statement of certain additional facts is necessary.

It was plaintiff's contention that the Sandusky truck struck the Offenbacker automobile and knocked it into the side of the tractor-trailer. There was evidence, as

subsequently noted, to the effect that William Osborne, the operator of the tractor-trailer, had indicated that it was the Sodowsky Oldsmobile that has been knocked into the side of his vehicle. The Sandusky truck had a bumper with hexagon shaped bolt heads. Following the collision there were indentions on the back of the Offenbacker automobile which apparently were made by a hexagon shaped object. Other evidence indicated that a collision had occurred between the front of the Sandusky truck and the back of the Offenbacker automobile.

Gary Pittman had inspected the Offenbacker and Sodowsky vehicles after the accident. He was shown four photographs of the Sandusky truck, and he testified that in each photograph he could see two hexagon bolt heads on the front bumper, and he drew a circle around the bolt heads shown on the photograph. He was then shown five photographs of the Sodowsky automobile, and was asked: " * * * do you see any hexagon shape bolts extended from the front of the Oldsmobile?" The objection, which was overruled, was that the question is "asking for a negative. What is in the picture he can testify to. What is not in the picture is not relevant." The witness answered, "Well, I know the automobile well enough to know that anything they expose is not hexagon heads there. They are round headed." This answer indicates that the witness may have answered from personal knowledge and not from what he saw on the photographs.

Appellant cites only Black v. Kansas City Southern Railway Co., 436 S.W.2d 19 (Mo. banc 1968), which does not hold that negative evidence is not admissible. Instead, it expressly holds that in certain circumstances such testimony is admissible. There was no objection that the witness was not qualified to relate what was or was not shown by the photographs, or that the photographs were the best evidence and there was no need for an interpretation by a witness. In Gathright v. Pendegraft, 433 S.W.2d 299 (Mo.1968), it was held that

"The negative fact * * * would ordinarily be proved by negative evidence * * *. In proper circumstances * * * such negative evidence can constitute probative evidence from which a jury can properly find the negative fact." That case pertained to proof of the absence of an odor of gas. In this case, the fact that the photographs of the Sodowsky automobile did not show hexagon shaped bolts on the front bumper was material to the issue of which vehicle caused the indentions on the Offenbacker automobile, and the trial court did not err to the prejudice of appellants in permitting the testimony.

Appellant next contends error resulted by admitting into evidence an out-of-court statement by defendant Osborne made to Trooper Whitt. Appellant contends the statement was hearsay, that it was not an admission, and was not a prior inconsistent statement for purposes of impeachment.

Trooper Whitt testified that he investigated the accident in which Larry Offenbacker was killed, and that he obtained a statement from William Osborne, the operator of the tractor-trailer. Counsel for appellants objected to the admission into evidence of the statements as to them, and asked that the jury be instructed that it should not be considered as evidence against them. Counsel for plaintiff stated he had no objection to that request, but the court merely overruled the objection. The Trooper then read the statement of William Osborne as follows: "I was traveling south when I saw this pickup truck [Sandusky vehicle] overtake and hit this F-85 sedan [Sodowsky automobile]. The sedan was knocked crossways in the road into my trailer tires." Subsequently, out of the presence of the jury, the court stated: "I have been considering my ruling on Mr. Koerner's objection to the Trooper testifying about the statement given by Mr. Osborne, who is the driver of the truck for Dick's Transfer. I should have waited or read or found out what the statement was going to be. As I think about the state-

ment, I am not even sure it's an admission against interest on his part. He didn't say anything bad and I think I was in error in doing that. * * * And I think it's erroneous to leave that in and I am going to reverse my ruling and instruct the jury to disregard it * * *." The court then identified the statement to the jury and instructed them to disregard it.

■ We do not see how the admission into evidence of this statement could have been harmful to appellants. In fact, it appears that it would be helpful to them. Plaintiff's contention was that appellant's truck hit the Offenbacker automobile and caused it to be knocked into the tractor-trailer. The statement was to the effect that appellant's truck knocked the Sodowsky automobile into the tractor-trailer. If that were so it tended to disprove the basis for plaintiff's claim against appellants.

Subsequent to the direction by the court to the jury to disregard the statement, William Osborne testified on cross-examination by appellants' counsel that he had no recollection of seeing the appellants' truck hit the Sodowsky Oldsmobile. Then on cross-examination by counsel for plaintiff, he again stated that he did not recollect seeing the pickup truck strike the Oldsmobile, and then added: "I might have seen it out of the corner of my eyes. I might have had my head turned just a little and just—I might have seen it out of the corner of my eye, I don't know. I won't say positively." The following occurred:

Q. Well, let me ask you, sir, if this isn't the statement you gave the Highway Patrolman—

Mr. Koerner [Counsel for appellants] Now, your honor, I am going to object to this on the grounds that the court has already made a ruling.

The Court: Well, this is—the man, he is on the stand now so my ruling doesn't apply.

Mr. Koerner: It still is not an admission.

The Court: I understand. This is a different situation. Objection overruled.

The statement by Mr. Osborne as contained in the report of the Highway Patrolman was then read to Mr. Osborne, and he replied: "If he has got it there, I guess it is."

Appellants contend the admission of the statement was prejudicial to them because "it injected into the case substantive evidence of a negligent act on the part of defendant Sandusky that had not been pleaded by plaintiff, i. e., striking the Oldsmobile in the rear." For two reasons, considered separately or cumulatively, we find no merit in appellants' contention of prejudice.

First, the trial court instructed the jury to disregard the statement after it was first read to the jury when the Patrolman was on the stand. In State v. Fulkerson, 331 S.W.2d 565 (Mo.1960), this court reviewed a situation where evidence previously admitted was subsequently withdrawn and the jury instructed to disregard it. It was held that for such circumstance to require reversal of the judgment, the evidence "must have been of the nature to have been prejudicial to the defendant and so impressive that the appellate court is of the opinion that its effect was not removed by the remarks of the trial court." As previously noted, we fail to see how the statement was prejudicial to appellants in the circumstances of this case. Also, it was not of the nature that a jury composed of reasonably intelligent persons could not follow the instructions of the court and disregard it.

■ Second, accepting appellants' contention that it was improperly admitted when Trooper Whitt was testifying, when Mr. Osborne was testifying it was properly admitted as a prior inconsistent statement for purposes of impeachment. See Neavill

v. Klemp, 427 S.W.2d 446 (Mo.1968). We cannot agree that the prior statement of Mr. Osborne to the Highway Patrolman was not inconsistent with his testimony at trial. Appellants made no objection to the admission of the statement during the testimony of Mr. Osborne on the basis that it was not a prior inconsistent statement, and did not request that if it be admitted the jury be instructed that it should be considered for a limited purpose.

The final point for consideration is the contention that the trial court erred in permitting plaintiff to amend her petition by adding the allegation that "defendants knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have stopped their vehicle but defendants failed to do so." The record shows only that after the close of all the evidence "the plaintiff offers a first amended petition, which is by the court sustained over the objections of both defendants." In appellants' point they contend that the amendment set forth an act of negligence on the part of appellant which was not pleaded in the original petition, and "which was not supported by the evidence."

We have previously ruled that a submissible case was made by plaintiff against appellants on this theory of negligence. We need not restate our reasons. Rule 55.53, V.A.M.R., provides that leave to amend pleadings "shall be freely given when justice so requires," and Rule 55.54 permits an amendment of the pleadings to conform to the evidence to be made on motion of any party at any time. The court did not err in permitting the amendment.

The judgment is affirmed.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

HENLEY, P. J., DONNELLY, C. J., and MEYER, Special Judge, concur.

FINCH, J., not a member of Division when cause was submitted.

MORGAN, J., not sitting.